OPINION. Harron, Judge: Respondent determined that East Flagler did not loan $152,000 to B. L. and S. on April 13, 1949; that on that date East Flagler had accumulated earnings and profits in the amount of $114,580.09, that figure being the amount shown on East Flagler’s balance sheet as “earned surplus” on November 30, 1949; and that the advance of $152,000 represented a distribution of dividends to the extent of $114,580.09, and a return of capital to the extent of $37,419.91. He apportioned these amounts to East Flagler’s four stockholders as follows: [[Image here]] In his amended answer respondent makes an alternative contention that if no part of the alleged corporate distribution was received by Laurence, then Levenson received a distribution of $50,666.67, of which $38,193.37 represented dividends and $12,473.30 represented return of capital. Respondent contends that his determinations are required by section 115 (a) and (b), 1939 Code. Petitioners contend that the withdrawal of April 13, 1949, was a loan. In the alternative, petitioners argue that if the withdrawal of April 13, 1949, constituted a distribution of corporate earnings and profits, then, for the same reasons, the withdrawal of $323,000 on November 13, 1947, also constituted a distribution of earnings and profits, and such distribution reduced East Flagler’s earnings and profits available for distribution as dividends in 1949, by the amount of its accumulated earnings and profits as of November 30,1947. The question to be decided is whether East Flagler’s advance of $152,000 on April 13, 1949, to B. L. and S. was a loan, or a distribution out of earnings and profits taxable as a dividend, in part, and a return of capital. The question is one of fact. Wiese v. Commissioner, 93 F. 2d 921, 923, certiorari denied 304 U. S. 562, rehearing denied 304 U. S. 589. The ultimate finding disposes of the question in petitioners’ favor. When East Flagler was acquired by means of purchasing its outstanding stock, its assets consisted of two pieces of real estate on which two rental buildings stood, plus some cash on hand. These were non-liquid assets and East Flagler’s sole source of income. The three original stockholders, B. L. and S., did not contribute any cash to East Flagler for working capital so that the two rental properties had to carry themselves; that is to say, the current receipts from rents were the source of funds for operating the two buildings and for paying the amortization and interest charges of the first mortgage in the amount of $600,000. From the time B. L. and S. purchased the stock of East Flagler on November 12, 1947, through the fiscal year of East Flagler ended on November 30, 1949, practically all of East Flagler’s net earnings and such cash as it possessed on November 12, 1947, were absorbed by payments of first mortgage principal, and interest, and taxes,- and its remaining earnings, if any, were nominal. The source of the first withdrawal from East Flagler by B. L. and S. on November 13, 1947, in the amount of $323,000, was a loan from New England Mutual Life Insurance Company given in a refinancing of the first mortgage, and such withdrawal was used by B. L. and S. to acquire East Flagler’s stock. The Commissioner did not regard this withdrawal in 1947 as a taxable dividend and in these proceedings he is willing for the Court to find as a fact that B. L. and S. “intended the withdrawal to be a loan to be repaid.” The source of the second withdrawal from East Flagler by B. L. and S. on April 13, 1949, in the amount of $152,000, was a loan of $175,000 by West Flagler to East Flagler which was made on April 11, 1949, for which East Flagler gave its note, due in 2 years and bearing interest, secured by a second mortgage on East Flagler’s properties. At the time of West Flagler’s loan to East Flagler, B. L. and S. were certain that East Flagler’s net earnings after taxes and payments of first mortgage principal and interest would not be sufficient in 2 years, or more, to repay the loan of West Flagler; and they knew, equally well, when they withdrew $152,000 of the $175,000 from East Flagler that they would have to repay this advance if East Flagler were to repay its indebtedness to West Flagler. Evidence supporting the conclusion that the advance of $152,000 in April 1949 was a loan of East Flagler is found in the joint, note of B. L. and S. for $475,000, the sum of the two advances of East Flagler, and the carrying of both advances on East Flagler’s books as loans receivable. See Moses W. Faitoute, 38 B. T. A. 32, 35. B. L. and S. paid Langford, Inc., East Flagler’s successor, $120,000, in 1952, which was paid over to West Flagler. This fact cannot be ignored. Furthermore, B. L. and S. had substantial assets of their own in 1949 from which each could make repayment of his share of the advances so that the testimony that each intended the withdrawals to be loans at the time they were made cannot be passed over lightly. Such testimony as to intent is corroborated by the giving of a note, by East Flagler’s records on its books of the transaction, and by subsequent events. Carl L. White, 17 T. C. 1962; Al Goodman, Inc., 23 T. C. 288, 302; Comey & Johnson Co., 8 B. T. A. 52. Upon consideration of all of the evidence and circumstances, we are unable to conclude that the withdrawal from East Flagler in 1949 of $152,000 was carried out in such manner and at such time as to be essentially equivalent to distribution of taxable dividends. East Flagler did not have in 1949 a cash fund from which to make an advance of $152,000 to B. L. and S., whereas West Flagler had such fund. There were persuasive reasons against a loan of such amount directly by West Flagler to B. L. and S., which, we are satisfied, led to channeling the available cash through East Flagler. In so doing, the two properties of East Flagler were encumbered by a second mortgage which was given to West Flagler to secure East Flagler’s note, and when the Langford partnership took over East Flagler’s assets it carried the mortgage as a liability which eventually was discharged by Langford, Inc., upon payment to that corporation of $120,000 by B. L. and S. All of these arrangements were facilitated -by the control which B. L. and S. exercised over West Flagler and East Flagler and its successors, but even though that was true, it does not necessarily follow that the 1949 withdrawals from East Flagler were not loans. The record establishes that B. L. and S. regarded the loan by West Flagler to East Flagler, followed by their withdrawal of $152,000 from East Flagler, as a single transaction, which they considered as a loan to them, and which they intended to repay when West Flagler should require return of the funds. Their guarantee of repayment to West Flagler of the amount loaned to East Flagler supports the view that B. L. and S. regarded the whole arrangement as a single transaction. It is recognized that East Flagler was dissolved before B. L. and S. made any payment of principal or interest on account of the 1949 withdrawal. The dissolution of East Flagler served a business purpose, namely, to facilitate separate sales of the two properties owned by that corporation. This aspect of subsequent events does not affect our conclusion. At the time the withdrawals from East Flagler took place in 1949, there was not any plan or contemplation of dissolving and liquidating East Flagler; and at the time the withdrawals were made, it was intended that they were loans. Estate of Helene Simmons, 26 T. C. 409, 423, 424. Respondent has treated the 1947 withdrawal from East Flagler as a loan. We are unable to find any reasonable basis for his treating the 1949 withdrawals differently. Cf. Rollin C. Reynolds, 44 B. T. A. 342, 350; Victor Shaken, 21 T. C. 785. Both were substantially similar in all respects, and had the same objective, namely, the purchase of stock. Each loan was evidenced by a negotiable promissory note jointly executed by B. L. and S. Furthermore, when the second loan was executed, the first note was canceled and the second note was made in the amount of the two loans, so that both loans were evidenced by the same note. It is held, under all of the circumstances, that the withdrawal of $152,000 from East Flagler on April 13, 1949, by B. L. and S. was a loan, and did not constitute a distribution of corporate earnings and profits taxable as dividends under section 115 (a) and (b) of the 1939 Code. A Bule 50 computation is necessary because of some uncontested adjustments. Decisions will be entered under Bule 50.